UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EPHRAIM RODRIGUEZ,<br><br>Defendant. | No. 2:16-cr-00023 CKD<br><br><br><br>ORDER |

On May 19, 2016, this matter came on for hearing regarding the defendant's motion to exclude video evidence (ECF No. 14), the defendant's motion to dismiss for Brady violations (ECF No. 15), and the defendant's motion in limine to exclude video evidence (ECF No. 16). Special Assistant United States Attorney R. Ben Nelson appeared for the government. Jordan Davis appeared on behalf of the defendant. Upon review of the filings, arguments of counsel, the Court's in camera review of the camcorder video in question, and good cause appearing, IT IS HEREBY ORDERED that defendant's motions are granted in part and denied in part, as follows.

A. **Background**

On or about November 10, 2015, the defendant was cited by police officers from Beale Air Force Base for the theft of a pair of sunglasses, citation number 4370326. The defendant was

1

directed to appear at the Centralized Violation Bureau (CVB) calendar held on February 9, 2016. The defendant apparently made contact with the Federal Defender's Office and arranged for legal representation; when the defendant appeared before in court on February 9, 2016, the Federal Defender's Office was appointed to represent him. The defendant was arraigned on an Information charging a violation of Title 18 U.S.C. Section 661, Theft of Personal Property, a Class A misdemeanor, and entered a not guilty plea and demand for jury trial (ECF No. 4). He also consented to the jurisdiction of a magistrate judge (ECF No. 3). The government subsequently filed a Superseding Information correcting a clerical error, but charging the same offense (ECF No. 11). The case is currently set for a jury trial on August 15, 2016.

**B. Facts[1]**

On November 10, 2015, the defendant was staying at the Gold Country Inn, located on the grounds of the Beale Air Force Base. At some point in the morning, another guest left his Ray Ban sunglasses on the counter at the reception area. Shortly thereafter, the defendant approached the counter to conduct some business, and while standing at the counter took the sunglasses and put them in his pocket. Apparently the owner of the sunglasses returned, realized his sunglasses were missing, and complained to the reception-area staff. Realizing that the events might have been captured on one or more of the four surveillance cameras in the lobby, the staff reviewed the recordings, identified the defendant, and notified the base law enforcement officers. The officers later made contact with the defendant who returned the sunglasses.[2]

**C. Surveillance Cameras:**

As noted above, the Gold Country Inn is equipped with security cameras, at least four of

---

[1] The facts are largely undisputed. The Court relies herein on the summaries provided by the parties in their briefing, along with oral representations made at the hearing.

[2] The government alleges that the defendant made several statements to the officers, but the statements are not relevant to the Court's analysis of the pending motions.

which are positioned to capture events in the lobby area. The video footage is transmitted to equipment in the Inn manager's office, where it is recorded. After the owner of the sunglasses complained, hotel staff was able to review the recorded video footage of the lobby on November 10, 2015, which led them to contact law enforcement regarding the missing sunglasses. While it is unclear if law enforcement officials also viewed the footage on November 10, it is undisputed that Investigator Dockter viewed the footage on November 16, 2015, along with the hotel's manager, Carlos Corsiga.

Apparently neither Investigator Dockter nor Mr. Corsiga knew how to download surveillance footage onto a DVD, and neither made any inquiry about how to do so. Instead, Investigator Dockter used a hand-held camcorder to record the playback of the footage from one of the surveillance cameras as he and Mr. Corsiga watched.[3] There is no indication as to whether Investigator Dockter or Mr. Casiga watched footage from any of the other lobby surveillance cameras; in any event, only footage from one of the cameras was recorded by the camcorder.[4]

### D. Defendant's Requests for Video Surveillance

On January 4, 2016, Chief Assistant Federal Defender Linda Allison sent an email to one of the Special Assistant United States Attorneys (SAUSAs) assigned to the misdemeanor unit. Ms. Allison informed the SAUSA that her office would be representing the defendant, provided the citation number, and requested a copy of the video[5]. The email triggered an "out of office reply" indicating that the SAUSA would be out of the office until January 4, 2016 (i.e., that day).

---

[3] The comments and observations made by Investigator Dockter and Mr. Corsiga about what they were seeing were also captured on the camcorder, but the government has agreed that if they are allowed to play the camcorder video for the jury, it would be played without sound.

[4] The defendant's motions seek to exclude the copy made by Inspector Dockter, hereinafter referred as the "camcorder footage."

[5] While she was not specific about the video to which she was referring, it is clear that her intent was to request any video footage taken by the Gold Country Inn surveillance cameras on November 10, 2015 around the time the defendant was alleged to have taken the sunglasses.

The SAUSA never responded to the email.[6]

The defendant appeared at the CVB calendar on February 9, and three days later the Federal Defender's Office again requested a copy of the video (ECF 19-1 at 8). On February 17, 2016, the SAUSA provided discovery, including the camcorder recording made by Investigator Dockter on November 16, 2015. The government did not provide the actual surveillance footage from the Gold Country Inn, however, as all of the footage taken on November 10, 2015, had been overwritten by the surveillance system on January 9, 2016, and was destroyed. Apparently, however, the government did not explain that to defense counsel, however, as defense counsel made three more requests for the original video footage, on April 21, April 26, and April 27, 2016. The defendant's motion alleges that all of the requests for the video footage went unanswered. ECF 15 at 9.

The only surviving footage of the event is the camcorder copy made by Inspector Dockter of footage from one of the cameras. The Court has reviewed the camcorder footage, and confirms that the footage does depict a portion of the counter of the lobby, a customer leaving a pair of sunglasses, a person (identified by the government as the defendant) standing at the counter, and putting the sunglasses in his pocket. The Court's viewing also confirms that the camcorder footage is shaky, at times unclear as the operator appears to zoom in obscuring part of the timestamp, and ends when the defendant puts the sunglasses in his pocket.

**E. Defendant's Motions**

    1. **Motion to Dismiss** (ECF No. 15)

The Court addresses this motion first because, if granted, no further analysis would be required.

---

[6] The SAUSA not only failed to respond to the request himself, he apparently failed to convey the request to the investigating officers. Indeed, there is no evidence that the government took any action based on Ms. Allison's request, but rather simply ignored it.

Under Federal Rule of Criminal Procedure 12(b), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." "A defense is thus "capable of determination" if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." U.S. v. Covington, 395 U.S. 57, 60 (1969).

In ruling on a motion to dismiss in the criminal context, the Court may consider extrinsic evidence. Covington, 395 U.S. at 60; see also Fed. R. Crim. P. 12(d) ("When factual issues are involved in deciding a motion, the court must state its essential findings on the record."). ""[A] district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact.'" U.S. v. Shortt Accountancy Corp., 785 F.2d 1448, 1452 (9th Cir. 1986).

In this case, the defendant urges the court to dismiss the Information based on an alleged Brady[7] violation. "Under Brady, the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." United States v. Stinson, 647 F.3d 1196, 1208 (9th Cir. 2011), as amended (citation and internal quotation marks omitted). "There are three components of a Brady violation: the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Id. (citation, alteration, and internal quotation marks omitted).

The defendant argues that the government's failure to preserve and disclose the videotape footage of all four video cameras in the lobby of the Inn will deprive him of his Due Process

---

[7] Brady v. Maryland, 373 U.S. 83, 87 (1963).

rights. The defendant has not shown, however, that the destroyed video footage is exculpatory. Indeed, the portion of the footage which was preserved appears to be inculpatory, showing the defendant picking up the sunglasses and putting them in his pocket. There is no indication that the original footage from any of the cameras in the lobby would be exculpatory in any way.

Therefore, the Court denies the defendant's motion to dismiss.

2. **Motions to Exclude Video Evidence** (ECF Nos. 14 and 16)

The defendant also moves to exclude the camcorder footage on Due Process grounds, and on the basis that the camcorder footage violates the best evidence rule.

  a. Due Process

The defendant argues that the government's failure to preserve all of the video footage from the lobby violates his due process right to present a complete defense. In California v. Trombetta, 467 U.S. 479, 489 (1984), the Supreme Court held that "the government violates the defendant's right to due process if the unavailable evidence possessed 'exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.' " United States v. Cooper, 983 F.2d 928, 931 (9th Cir.1993) (quoting Trombetta, at 489). The Court subsequently added a third requirement for establishing a due process violation in Arizona v. Youngblood, 488 U.S. 51, 57–58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), holding that the defendant must demonstrate that the government acted in bad faith in failing to preserve the potentially useful evidence.

The Court need not reach the issue of bad faith by the government, however, in that the Court finds that the surveillance footage did not possess exculpatory value that was apparent before it was destroyed. While the defendant asserts that the other views of the lobby might have shown activity explaining the defendant's actions (glancing around) before he picked up the

sunglasses and put them in his pocket, the Court does not find this argument persuasive.

      b.  Best Evidence

The defendant also argues that the camcorder footage taken by Inspector Dockter should be excluded from trial as running afoul of the Best Evidence doctrine.  The Court agrees.

Federal Rule of Evidence 1002 requires that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."  Rule 1003 provides that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."

The Court is mindful of Inspector Dockter's declaration in which he avers that the camcorder footage he took is a "true and accurate copy of the original recording." (ECF 19-2 at 3.) The Court does not dispute that the camcorder footage accurately captured the portion of the video footage in the frame, but clearly it did not capture the whole frame (as evidenced by the partially missing timestamp). Nor did the camcorder footage capture the entirety of the defendant's activities in the lobby, as the camcorder footage ends as the defendant put the sunglasses in his pocket.[8] Nor did the camcorder capture any of the footage from the other three cameras.

Under the circumstances present in this case, the Court concludes that, pursuant to Federal Rule of Evidence1003, it would be "unfair to admit the duplicate."

F. **Conclusion**

For the foregoing reasons:

  1.  The defendant's Motion to Dismiss (ECF No. 15) is denied;

  2.  The defendant's Motion to Exclude Video Evidence (ECF No. 14) is denied; and

---

[8] This particularly problematic as, according to the defense motion, "one of the officers states that [the defendant] returns to the counter, but fails to record what happens at that time." ECF 16 at 4.

3. The defendant's Motion <u>In</u> <u>Limine</u> to Exclude Video Recording (ECF No. 16) is granted.

IT IS SO ORDERED.

Dated: June 1, 2016

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE